# PARAMOUNT TEXTILE MACHINERY CO. v. WALTER SNYDER CO.

(District Court, E. D. Pennsylvania. October 15, 1924.)

No. 2523.

Patents ⚙328—1,075,346, for hosiery drying board, held not infringed.

The Flick patent, No. 1,075,346, for a hosiery drying board or form, *held* not infringed.

In Equity. Suit by the Paramount Textile Machinery Company against the Walter Snyder Company. Decree for defendant.

Charles H. Howson, of Philadelphia, Pa., and Edmund H. Parry, of Washington, D. C., for plaintiff.

Fraley & Paul and Henry N. Paul, Jr., all of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This bill originally concerned letters patent known to this record as Flick, No. 1,075,346; Brine, No. 1,218,520; and Prosser, No. 1,268,066. The prayers of the bill have been reduced to those which relate to the Flick patent only, and claims 3 and 4 thereof are alone in issue. Title to the patent is not in dispute. The charge of infringement is restricted to certain structural features of plaintiff's hosiery—drying board or form, which are charged to be features of the board or form manufactured by defendant. The defense is epitomized as noninvention and noninfringement.

The essential feature of claim 3 of the patent is any board or form having "a single groove on one side" running along the rear edge of the board, and of claim 4 is a thin metallic sheet board having the contour of the section of a stocking, one line edge of which is the front line of the stocking, and the other the back line and having a single groove following the course of this back line. The inventor's embodiment of this feature follows literally this description, as it is a metallic board extending without change to its edge, except that near and along the edge there is sunk or cut a channel, which is the groove described. This cut or channel has perpendicular sides, with a flat bottom, making the form of the groove rectangular. The cut on one form is on one side of one board and on the opposite side of the other to accommodate "ups" and "downs" or rights and lefts.

The infringing form in the electrically heated boards differs from the description of the patented form and from this concrete embodiment of it in that the edge of the board is formed of a thin flat sheet of metal which may be described as the projection of

the center of the edge of the board proper, the metal of the latter being rounded down to meet this projecting center edge. The rounding is convex. What the plaintiff calls a groove and the defendant a guide is thus on each and both sides of the board, is near it, and follows it in direction. In the steam-heated boards, the like feature is best described by calling it a beaded edge. Before the introduction of metallic forms, with the feature of being what may be called internally heated, the practice was to use flat forms of wood. These were literally boards shaped as is a stocking when creased at the front and back and laid flat. The stockings, when damp, were drawn over these forms. They were dried in what was known as a "dry box," and when dried they were put in piles in a press, the pressure to which subjected giving to each stocking the desired crease. In drawing the stockings over the forms it was necessary that they be kept straight. This called for manual deftness and skill in the operator. A groove or shoulder or guide of some kind in line with which the seam of the stocking might be kept is clearly helpful as if the seam comes where it should come when the stocking is drawn straight, the wales of the knitting will likewise run straight, and the stocking as a whole will be drawn straight on the form.

Counsel for the defendant concedes that "a shallow groove" might have many advantages so obvious that "many persons must have" thought of it, but asserts that the defects of wooden forms were so many and would have been so increased by such a groove that no use was ever made of forms with grooves. Then came the thought of a metallic substitute for the wooden forms. Flick's thought was that the metal substitute would be improved by his groove feature.

The defendant's position is that metal forms were as objectionable or more so than the wooden ones. If the metal was made thin enough to be light the form was too flimsy, and if made stiff enough by more metal, it was too heavy. The consequence was that the grooved forms, whether of wood or metal, never came into use. Whether possessed of utility or not a grooved form was what Flick claimed to have invented. He clearly thought it was necessary, probably because of the thinness of the metal, to have forms with the groove on opposite sides to accommodate rights and lefts in the stockings. Vogel seems to have had the same thought in his mind, plus the further thought of the form being electrically heat-ed. The Flick patent application bears date September 14, 1912. The patent issued October 14, 1913. The Vogel application carries corresponding dates of October 21, 1911, and December 10, 1912. The right to the use of the Vogel patent is in the defendant. The defense is thus suggested that Vogel had first invented the grooved form, and made use of such forms before the date of the Flick claimed invention. Indeed, this is the defense pleaded. Such, however, is not the defense set up at the trial and now urged. The electrically heated boards would seem to be an importation, and the abandonment of the Vogel patent defense an admission that he was antedated by Flick in the groove feature.

The parties are rival manufacturers of hosiery boards. There is room for the suspicion that the Vogel patent was hoped to shut out the plaintiff, and the plaintiff retorted with the purchase of the Flick patent in the hope of shutting out the defendant from dangerous competition. However this may be, the position of the defendant now is that the Flick patent is invalid for want of invention; that the patent is a mere paper patent, and, even if invention be present, the claims should be limited strictly to the very feature described in the application; and, finally, that the patent, whatever the scope of its claims, belongs to a discarded device of the art, and has no relation to or part in the modern appliances.

The difficulty in accepting the defense of noninvention is that the defendant accepted the Vogel device, including the groove, as displaying invention. The real defense is that it would be an abuse of the patent laws to give to a patentee a monopoly of the use of a groove in internally heated forms, where the groove is of real value, merely because he was the originator of the idea of a groove in flat wooden or metal boards when what he had patented was no longer of use to any one. In this sense the patent is a paper patent.

Assuming the fact situation to be as counsel for defendant pictures it, that the patentee designed a groove of a described character to be cut in wooden or metal boards on one side; that the use of all such boards was superseded by a new type of board, so that a patent relating to the old form of boards became a dead letter, to have such a patentee hold up the use of the new board merely because some feature of the old bears a more or less remote resemblance to some feature of the new might well arouse resentment. On the other hand, the designer of a wholly new type of board would not,

because of its merits as a whole, be justified in appropriating the patented features of the old type, even if the old type was no longer in use.

The contrasting views are that, if the law does not support a patentee in his monopoly, "the progress of science and the useful arts" is not promoted, and, on the other hand, to give to one who has invented something, which has become of no use, the power to stop the use of a new thing of the highest utility is not to promote progress but to hamper it. The way out is to be found in the definition of the scope of the invention. The main, if not the only, functions of the Flick groove, were that it served as a guide and aid in the adjustment of the stocking on the form and to hold it in place. The groove was placed on the side of the form away from, although near to, the edge. A feature of the Brine patent answered to these same functions. The essential difference between Flick and Brine was that the latter placed his groove directly at the edge. Another difference, at least in the preferred form of construction, was that the side walls and the bottom of the Flick groove formed a rectangle. The guide was a canal rather than a groove. Brine made his saw-toothed. It was an indent rather than a groove or canal. The defendant in its steam-heated form has resorted to the use of a bead, and in its electrically heated forms to a projecting plate, which is not a canal because it has but one bank, and that, instead of being a perpendicular cut, shelves out in a convex shape. The differences, however, exist only if the observer is looking for differences. The difference, on the other hand, between Brine and Flick, is certainly no greater than the difference between the defendant and Flick. The plaintiff has committed itself to a recognition of the first difference, and is in consequence in no position to complain of a finding of the second difference.

This finding we accordingly make, and a decree may be submitted dismissing the plaintiff's bill, with costs, on the ground of noninfringement.